UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VICTORIA M.,

          Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

Case No. C20-248-MLP

ORDER

## I.    INTRODUCTION

Plaintiff seeks review of the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in: (1) assessing and developing the medical evidence, (2) discounting Plaintiff's testimony, (3) conducting the administrative hearing, (4) disregarding vocational expert ("VE") testimony, (5) failing to meet the Commissioner's burden at step five, and (6) misapplying the Medical-Vocational Guidelines ("the Grids"). (Dkt. # 14 at 1-2.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.    BACKGROUND

Plaintiff was born in 1963, has a 10th-grade education, and has worked as a bar manager, cafeteria worker, cashier/cook, housekeeper, and temporary worker. AR at 285, 572. Plaintiff

ORDER - 1

was last gainfully employed in November 2014. *Id*. at 559.

In June 2015, Plaintiff applied for benefits, alleging disability as of January 1, 2013. AR at 530-39. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id*. at 391-94, 397-403. After the ALJ conducted hearings in July 2017, February 2018, and June 2018 (*id*. at 223-338), the ALJ issued a decision finding Plaintiff not disabled. *Id*. at 15-25.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since the alleged onset date.

Step two: Plaintiff has the following severe impairments: spine disorders, osteoarthrosis and allied disorders, anxiety disorder, and affective disorder.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity: Plaintiff can perform sedentary work with additional limitations; she can lift/carry 20 pounds occasionally and 10 pounds frequently. She can stand/walk (with normal breaks) for a total of about two hours per workday, but needs to sit after 30 minutes of standing/walking for 10 minutes or more. She can sit (with normal breaks) for a total of about six hours in a workday. She can occasionally climb ramps and stairs; stoop; and crouch. She can never climb ladders, ropes or scaffolds; crawl; or kneel. She can frequently reach overhead on the left. She must avoid concentrated exposure to extreme cold, wetness, and hazards (dangerous machinery, unprotected heights, etc.). She may be off-task up to 7% of a workday. She can have frequent contact with co-workers. She can have contact with the general public, up to 20 minutes at a time.

Step four: Plaintiff can perform past relevant work as a gas station attendant.

AR at 15-25.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER - 2

## III.  LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.  DISCUSSION

### A.  The ALJ Did Not Harmfully Err in Assessing or Developing the Medical Evidence

Plaintiff mounts some degree of challenge to the ALJ's assessment of the medical opinion evidence, first contending that the ALJ applied the incorrect regulations. Plaintiff is mistaken. The ALJ explicitly applied the regulations that govern this case. AR at 20 ("I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and

ORDER - 3

416.927."). Furthermore, the applicable regulations do not (as Plaintiff contends) mandate that an ALJ credit a treating provider's opinion: an ALJ retains the ability to discount a treating source opinion if he or she provides sufficient reasons to do so. *See, e.g.*, *Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

Plaintiff goes on to assign error to the ALJ's crediting of a form opinion completed by examining psychologist J. Alex Crampton, Psy.D. *See* AR at 766-70. Plaintiff contends that Dr. Crampton's opinion does not constitute substantial evidence because it amounts to speculation and consists only of opinions expressed in checkbox selections. (Dkt. # 14 at 14.) Dr. Crampton's opinion does include a checkbox portion, but also includes a summary of Plaintiff's interview and mental status examination, as well as Dr. Crampton's diagnoses and clinical findings. AR at 766-70. Plaintiff obviously disagrees with Dr. Crampton's conclusions, particularly his interpretation of the malingering testing, but has not shown that the ALJ erred in assigning significant weight to Dr. Crampton's opinion. *See id*. at 23.

Plaintiff also argues that the ALJ erred in failing to obtain medical expert testimony, as Plaintiff had requested in a prehearing letter. (Dkt. # 14 at 14 (citing AR at 677-78).) Plaintiff requested ME testimony as a method of "filling in the gaps" in the evidence in light of counsel's difficulty in obtaining all of the relevant medical records. AR at 677-78. This request was made before the second hearing, but the ALJ went on to hold a third hearing to allow Plaintiff to supplement the record with additional records. *See id*. at 314-38. Plaintiff has not shown that the record before the ALJ was inadequate, and thus has not shown that the record should have been developed further in a particular way. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for

ORDER - 4

proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996))).

Lastly, Plaintiff appears to assign error to the ALJ's discounting of the January 2018 letter written by Plaintiff's treating therapist, Julia Kocian, MHP. (Dkt. # 14 at 16.) Ms. Kocian listed Plaintiff's diagnoses and symptoms, and wrote that people who have Plaintiff's conditions "often find it difficult to work" due to various limitations, and that it is "likely" that Plaintiff "would encounter difficulty in a place of work." AR at 1128-29. The ALJ gave some weight to Ms. Kocian's letter, but found it inconsistent with Plaintiff's activities during the adjudicated period, specifically her ability to work in a family business, travel out of the state, and visit her sister every weekend. *Id*. at 23. Evidence of inconsistent activities is a germane reason to discount a lay opinion. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

Plaintiff argues that the ALJ's reasoning is not supported by substantial evidence in light of Plaintiff's sister's testimony describing Plaintiff's difficulty in working for the family business. (Dkt. # 14 at 8 (citing AR at 256-63).) At another point in the record, however, Plaintiff described only minimal limitations in working for a family business. *See* AR at 1091 (describing problems with "punctuation"). In any event, the ALJ cited other activities that he found to be inconsistent with Ms. Kocian's letter, and Plaintiff has not shown that any of those findings are erroneous. Thus, Plaintiff has alleged at most harmless error in the ALJ's reasons for discounting Ms. Kocian's letter.

For all of these reasons, the Court finds that Plaintiff has failed to establish any harmful legal error in the ALJ's assessment or development of the medical record.

### B. The ALJ Did Not Err in Assessing Plaintiff's Subjective Testimony

The ALJ discounted Plaintiff's subjective testimony because: (1) her activities were inconsistent with her allegations[3], (2) objective medical evidence did not support her allegations, and (3) her symptoms worsened due to situational stressors rather than her impairments. AR at 21-23.

Absent evidence of malingering, an ALJ's reasons to discount a claimant's testimony must be clear and convincing. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). Evidence of malingering exists in this case: an examining psychologist diagnosed Plaintiff with malingering. *See* AR at 767, 769. This affirmative evidence of malingering obviates the need to provide clear and convincing reasons to discount Plaintiff's testimony. *See Carmickle*, 533 F.3d at 1160.

Nonetheless, the ALJ provided reasons to discount Plaintiff's testimony, and Plaintiff has not addressed these reasons or shown that they are insufficient. Plaintiff's general references to black letter law (dkt. # 14 at 16) do not establish that the ALJ erred. Accordingly, the Court finds no error in the ALJ's assessment of Plaintiff's subjective testimony.

### C. Plaintiff Has Not Established Error Relating to the Administrative Hearing

Plaintiff raises several challenges to the ALJ's conducting of the administrative hearing. Plaintiff first contends that counsel was unduly restricted at the hearing and that the ALJ's time limits curtailed his ability to make his record both as to Plaintiff's testimony and her sister's testimony. (Dkt. # 14 at 11-12, 15.) Plaintiff also objects to the ALJ's characterization of

---

[3] Plaintiff challenges one of the ALJ's factual findings related to her activities: she contends that the ALJ inaccurately stated that she had been injured while walking her dog, when in fact a loose dog pulled her over and she injured herself on her walker. (Dkt. # 14 at 11.) There are multiple versions of this incident in the record, one of which is consistent with the ALJ's version, however. *See* AR at 834 ("Patient fell after being tripped while walking her dog."). The ALJ cited this page of the record, and Plaintiff has not shown that the ALJ's decision lacks the support of substantial evidence on this point.

counsel's questions as "leading" (AR at 238-39) and the ALJ's redirection away from leading questions. Lastly, Plaintiff references certain statements made by the ALJ suggesting how she could help obtain her treatment records, as well as statements she made herself indicating that the hearing experience was stressful for her. (Dkt. # 14 at 12.)

The Court does not find these arguments persuasive. First, the ALJ held three hearings in this case, allowing testimony from Plaintiff at all three hearings. At the third hearing, the ALJ indicated that he would allow counsel to have 15 minutes to question Plaintiff, and as they reached the end of that time, counsel indicated he was ready to examine Plaintiff's sister. AR at 231, 246. Thus, the hearing transcript does not contain any indication that counsel was unable to complete his examination of Plaintiff. Counsel was indeed prevented from completing his initial questioning of Plaintiff's sister (*id*. at 261-63), but the ALJ allowed him to ask one more question later on (*id*. at 269) and also allowed him to submit written answers from the witness to additional questioning if he wished (*id*. at 263). The ALJ's management of the hearing proceedings is consistent with agency guidance directing that it is the ALJ who "determines the subject and scope of testimony from a claimant and any witness(es), as well as how and when the person testifies at the hearing." Hearing, Appeals, and Litigation Law Manual I-2-6-60, *available at* https://www.ssa.gov/OP_Home/hallex/I-02/I-2-6-60.html (last accessed Nov. 2, 2020).

Furthermore, the ALJ did not err in identifying certain questions as "leading" or in redirecting counsel away from leading questions. The ALJ did not strike Plaintiff's answers to leading questions and thus no harm could have resulted. *See* AR at 238-39.

Lastly, Plaintiff has not established any error related to the ALJ's treatment of her during the hearing, despite her alleged mental conditions and limitations. She has not shown that the symptoms she describes experiencing during the hearing prevented her participation in any of

ORDER - 7

her three hearings, such that she was deprived of an opportunity to be heard.

### D. The ALJ Did Not Enter Findings at Step Five, and Thus Did Not Err at Step Five

At step five, the Commissioner bears the burden to show that a claimant is not disabled because he or she can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2).

Plaintiff alleges that the VE's testimony failed to establish the existence of any jobs that she can perform that exist in significant numbers (dkt. # 14 at 17), but this argument does not account for the content of the ALJ's decision: the ALJ found Plaintiff not disabled at step four, and did not proceed to step five. *See* AR at 24-25. Thus, because the ALJ did not rely on the VE's testimony at the hearing as to other jobs, no error in the ALJ's decision can be associated with that testimony.[4]

Plaintiff also argues that the ALJ erred in misapplying the Grids. (Dkt. # 14 at 17.) But as Plaintiff herself acknowledges, the ALJ did not apply the Grids at all. Again, the ALJ found Plaintiff not disabled at step four and did not go on to consider the Grids at step five. AR at 24-25. Thus, the ALJ's decision does not contain any misapplication of the Grids.

### V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED,** and this case is **DISMISSED** with prejudice.

---

[4] Plaintiff also requested additional VE testimony via interrogatory after the hearing, related to the job numbers for the jobs identified by the VE in response to the hypotheticals posed at the hearing. *See* AR at 697-99. But again, as the ALJ did not proceed to step five, and thus did not rely on VE testimony regarding job numbers, no harm could result from the failure to obtain further VE testimony on this issue. *See id*. at 16.

ORDER - 8

Dated this 2nd day of November, 2020.

*MJPeterson*

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 9